# United States Bankruptcy Court
# for the Western District of Washington,
Seattle

| | |
|---|---|
| Marta Lyall<br><br>V<br><br>Rushmore Loan Management et al. | Chapter 11 Case No: 23-01008<br>Judge: Christopher M. Alston<br><br>**Notice of ERRATA**<br><br>**Adversary COMPLAINT** |

## NOTICE OF ERRATA

## Parties

**Defendants**

**Rushmore Loan Management,**
15480 Laguna Canyon Rd, Irvine, CA 92618

and their client:

**Bank of America,**
PO Box 15047, Wilmington, DE 19850 attn: legal processing

**Jason Wilson-Aguilar**, Chapter 13 Trustee, US Bankruptcy Court of Washington, Western District, Seattle

**Mary Lisa Lewandowski,** Regional Commissioner for the Social Security Administration, Denver and Seattle **Regions**, Seattle District Office, 300 Fifth Avenue, Ste 1110, Seattle, WA 98104

**Kimberly Williams, Office of the Customer Advocate,** Federal Student Aid, PO Box 300003, Greenville, TX74503

**Jane and John Doe**, Humana Medicare Advantage
Plaintiff reserves the right to add as Defendants, 2 Jane and John Does, from Blackstone, Inc, and Blackrock, NYC, NY, partners of Bank of America.

**Plaintiff**
Marta Lyall, Former tenure-track professor at Carnegie Mellon University, Founder of io-Haptik LLC, a Montana Corporation, Citizen of Washington State.

**Venue**
Please see attached Motion to transfer and join existing case in Montana Federal District Court.

**Jurisdiction**
Please see attached Motion to transfer and join existing case in Montana Federal District Court.

**Introduction**

A question/controversy arises as to whether Bank of America, has continued to influence others through their relationships and partnerships with Blackrock, Blackstone Inc, through their agent Rushmore Loan Management. There are historic documents which show they did collude with Carnegie Mellon University in multiple attempts to interrupt the Plaintiff's professional life, her income and the removal of her assets during the Plaintiff's 27 year history of retaliation and abuse, arising from her employment at Carnegie Mellon University, which resulted in a significant violation of the Plaintiff's constitutional rights, including the 14th, 9th, 4th and 1st Amendments.

In filing her Individual bankruptcy case under Chapter 11, the Plaintiff firmly states a controversy arises, that needs to be decided by a Federal District Court. See the attached Motion to Transfer and Join to CASE No: Cv 22-123-M-DLC, Montana District court, Missoula Division.

Controversy in the Montana Federal case directly impacts the determination of Rushmore Loan as Creditor in this Chapter 11 case, based on their former Mortgage (which has now expired because of the Statue of Limitations), on the Debtor's property. In joining this adversary case to the Montana Federal case will also help to determine the factual amount of the Plaintiff's income and Debt other than that related to Rushmore Loan Management (and their partners and clients). These questions need to be answered in order to complete an accurate proposed plan for this Chapter 11 case.

This Chapter 11 adversary case is also needed to correct the multiple errors by multiple entities, causing a presumption of unpaid Debt, when there may be none or it may be a drastically lower amount than these entities are stating. These entities are other than those partners and clients of Rushmore Loan Management. They include the Plaintiff's student loan, (she is not in default), and multiple "stated" false debt amounts that were generated by a Medicare provider, after she filed the Montana Federal Lawsuit on July 13, 2022.

What would be the reason Federal Agencies, (such as Federal Student Aid, and Medicare), would engage in such arbitrary actions to artificially inflate the Plaintiff's debt after her Montana Federal case was filed, and after a false and wrongful Notice of Default was generated by North Star Trustee, on behalf of Rushmore Loan Management, their clients and partners? The Plaintiff would suggest, that it is to make it appear the Plaintiff has more Debt than she does, so that her credit score is reduced. This inhibits her from obtaining a new mortgage on her home through a refinance. It also would inhibit her ability to obtain credit when needed for emergencies. In addition it increases the likelihood that the Plaintiff would need to file Bankruptcy.

It appears, Jason Wilson-Aguilar, the Chapter 13 Bankruptcy Trustee is somehow part of this effort. His name was listed on the Notice of Sale, and on email communications to the Plaintiff from the North Star Trustee even though the Plaintiff had not had an active Chapter 13 case for years. Then why would Northstar Trustee add his name to the list of parties to receive their Notice of Default? The North Star Trustee was asked this by the Plaintiff. She refused to provide an answer and instead told the Plaintiff she would no longer answer the Plaintiff's questions via phone,

and demanded the Plaintiff would have to put further questions in writing. This clearly prejudiced the Plaintiff's rights in an active foreclosure case, giving advantage to the foreclosing party, Rushmore.

The Plaintiff's credit report shows no current or previous mortgage history by Bank of America, for her homestead property in Washington State, or her home in Memphis Tennessee which was wrongfully foreclosed in February 2018, and sold for tens of thousands of dollars beyond what was owed on the Mortgage. The accessor in Memphis TN, listed the home selling for $117K, (she owed $82k at the time). Rushmore did not pay off her HELOC, which was part of the 80/20 mortgage she originally obtained. And then the assessor listed the home being purchased for $2mm dollars within weeks. This was a home whose retail value at the time, was $140k. Something was clearly wrong. The Plaintiff attempted to address the wrongful actions regarding Rushmore and their partners actions surrounding this home, in her late 2015 Adversary case, in this Bankruptcy court, which was never heard as the Plaintiff was not represented by an attorney and her Mother was dying, so the Plaintiff was unable to prosecute the case. In 2018, the Plaintiff learned from a third Party researcher, that the assessors record in Shelby County TN, showed her former home was sold for $2mm soon after the foreclosure sale in 2018. This was a home with a retail value of $140k. Since 2020, that $2mm record on the assessors site for her home has been altered to make it appear more reasonable. Which facts are the true facts? This is well documented.

**Debt and the Collection of Debt, and recording of Debt, has a relation to Carnegie Mellon University (CMU) and their partners and funders.**

Strategies by US Banks which describe the behaviors on a larger scale which the Plaintiff has suffered.

In the geopolitical landscape, the United States Governments, and their respective lenders and funding institutions often provide funding to smaller countries who are sovereign entities. The United States and other NATO countries create false narratives in the media about the countries, framing them as having an undesirable leader, etc. They issue sanctions making it difficult for the countries to obtain the resources needed for their people to survive. Then the US funders step in, and offer an enormous loan to the struggling country, which it accepts because it has little choice. A few years later the US pulls on that Debt like a noose, calling in the loan, and the sovereign nation has no choice but to agree to do what the US demands, including installing a U.S. or NATO chosen leader, a US Military base and agreeing to the plundering of their natural resources. Blackrock, (a partner of Bank of America and their Partner Blackstone Inc) are involved in many of these efforts. And since at least 2008, they decided to use the same strategies on US citizens. The Plaintiff's case is one such case, and it is in part why she struggles so hard to retain her rights and her property. The Government agencies of King County Washington are leaders in allowing this type of abuse of US citizens under such schemes. And Blackrock has plans to purchase large numbers of homes which were wrongfully forced into foreclosure by the questionable Covid Pandemic lockdowns and mandates. This must stop, as it clearly violates the rights of US citizens.

It is clear, that multiple wrongful actions have been initiated, in order to remove the plaintiff's assets because of her history as a witness, 27 years ago at Carnegie Mellon University, when she served on their faculty as a tenure-track professor. It has taken decades for facts to be revealed, which show efforts have been designed to cause the Plaintiff to fall into financial duress, and even illness, in order to silence her valid voice should she ever choose to speak about what she witnessed. Luckily, time is now revealing the truth. She has recently learned that what she witnessed occurred at other high profile technical universities, leaving behind a trail of damage, across technological, financial and human landscapes, where University and Government administrations approved the exploitation of sexual violence, including the transfer of large sums of money internationally.

**Chapter 11 Adversary Case Facts**

**Value of Plaintiff's Homestead Property**
Plaintiff purchased her home in September 2001.
Plaintiff's equity in her homestead/property:
    Retail Value of Plaintiff's Property: over $1mm dollars.
        See Recent copy of King County Assessor's report: Exhibit A
            These amounts are always significantly lower than retail values.
See recent local values in her neighborhood of Innis Arden: Exhibit B

Plaintiff's Homestead Exemption: $885,100, per Governor Inslee's new law regarding King County Homestead Exemption's in 2021: Exhibit C

**Issues and Questions Requiring Answers for the Plaintiff's Chapter 11 case.**

The actions of Bank of America, (and their partners), including their Partner Rushmore Loan Management who was the named party to initiate the current foreclosure action through North Star.

Did/would Carnegie Mellon University benefit from the wrongful foreclosure actions of Defendant Rushmore Loan Management, Bank of America and their partners: (yes).

Is there a history between Rushmore Loan Management, Bank of America, Carnegie Mellon University and their partners and funders, where the <u>Unclean Hands Doctrine</u> applies? Yes.

Bankruptcy is a federal claim. There is a controversy as to the legitimacy of Rushmore Loan Management's (as acting party, for Bank of America and their partners), legal right to foreclose on the Plaintiff's property or put themselves out as a holder of a valid mortgage contract between the Plaintiff and Rushmore Loan management, any assignee or stated beneficiary. The mortgage has reached its statute of limitations:

As stated in the Montana complaint, the Washington Statute, RCW 4.16.0.40, which the Plaintiff points to in her claim, states the mortgage she signed in January 2008, with Countrywide, is no longer valid, as the statute of limitations has lapsed. The mortgage is only valid, for six years after the last payment was made, which was April 1, 2012. It has now been over ten years. Rushmore's Client, Bank of America, or anyone else they claim erroneously as their client, can not seek to foreclose, and has no claim on the Plaintiff's property under that mortgage.

Recently, the Defendant Rushmore has tried to point to RCW 4.16.020 as a statute which provides exceptions to the six years, allowing ten years, prior to the statute of limitations running out. But they misread this statute, intentionally. The statute counts backwards, from the date of an action filed to claim the property. And is only applicable if the party making the claim to the Property: Rushmore et al, is in possession of the property, which they are not, according to their public opinion. The Plaintiff lives in the property and has lived there since 2001, with a year away when she taught in Memphis, TN. The Plaintiff also purchased a home in Memphis, and then rented it from 2005-2017, because she could not sell it, a year after she purchased it, but had to return home to Seattle. The Plaintiff's homestead property is currently an asset in LYL Trust, a revocable Trust, which is a document recorded in King County, and was provided by the Plaintiff to North Star Trustee, and Rushmore Loan Management in July 2022, prior to the Notice of Sale being issued.

Rushmore Loan Management and their partners and clients, have also repeatedly misstated the Plaintiff's payment amount for her former mortgage, in District Court and Bankruptcy Court in order to cause any previous Chapter 13 cases to fail. (Documents). **This proves they are subject to a ruling based on the Unclean Hands Doctrine.**

Rushmore Loan Management and their partners and clients, owe the Plaintiff over thirty thousand dollars for the foreclosure of her home in Memphis TN. And owe the Plaintiff for interfering with her rental of that property, including arranging for the damage and abandonment of the property by a bank manager, who was directed to rent her home, and carrying out multiple attempts to sabotage her efforts to sell the property prior to the mortgage becoming default after 14 years of ownership.

Is Rushmore a secured or unsecured creditor?

If they are an <u>unsecured</u> creditor what would a fair and equitable settlement be between the Plaintiff and Rushmore Loan Management and their Clients, and Clients's partners, (Blackrock, Blackstone, Bank of America, Truman Trust) for the refinance mortgage loan the Plaintiff entered into in 2008? Any resolution of this debt would have to take into consideration the outrageous exploitation and weaponization of that financial instrument, to serve the interests of Carnegie Mellon University in their effort with other parties, including Bank of America and their partners Rushmore Loan Management, Blackstone, Blackrock, and Truman Trust 2013 et al), to harm the Plaintiff and remove her assets and continually destroy her professional and personal life, including her health.

Does filing this bankruptcy cause the debtor to legally restate or affirm Rushmore, as a secured creditor? Is this the reason Defendant Rushmore Loan Management undertook this wrongful foreclosure action in 2022? This would be

another action which would fall under the Unclean Hands Doctrine, as the Plaintiff offered to discuss how to resolve the financial claim Rushmore Loan asserted, multiple times, including in 2022, outside of Bankruptcy court.

Was there collusion to force the Plaintiff into bankruptcy, through the wrongful foreclosure action? Is this why the Foreclosure Trustee copied the Chapter 13 trustee, on communications and on the Notice of Sale, when no Bankruptcy was filed and had not been for three years?

Was this an attempt to force the Plaintiff to file bankruptcy when there was a Federal case filed in Montana, asking for declarative and other relief regarding the Notice of Default, (among other requests for relief). It appears so. And it appears the Chapter 13 Trustee, Jason Wilson-Aguilar was active in this effort, by his being copied on the communications and on the Notice of Trustee Sale from North Star Trustee.

Why did Mr Wilson-Aguiler ask to be copied on this Trustee's communication with the Plaintiff during this time? What would inform North Star Trustee to copy him? Is this a violation of the Plaintiff's right to privacy and a violation of the Foreclosure Trustee's position as a neutral party?

Why did Mr Wilson-Aguilar state in a hearing, in open court, during the Plaintiff's 2018 Chapter 13 case, that the Plaintiff never had a confirmed case, when it is in his records that she did? Note: He was engaged with the Plaintiff's attorney, Nathan Quigley in emails in 2013. **Exhibit D** Why would he work to harm her 2018 case? What was his motive?

Because of these actions, the Plaintiff asks that Mr Wilson-Aguilar not be allowed to work on the Plaintiff's Chapter 11 case, because of this clear controversy which should be clarified through the resolution of this case. She also requests that Jason Wilson-Aguilar be added to this case, as a Defendant under 42 USC 1983, so that his actions as an employee of US Federal Bankruptcy Court may be analyzed to determine whether he violated the Plaintiff's Constitutional Rights to her real property, including her homestead, as well as to work, to obtain credit from lending institutions, to preserve her credit score, which will become a U.S. citizens Social Credit Score in the near future, and other violations of her rights as a U.S. citizen.

If the Defendant Rushmore Loan Management (and their partners, including Bank of America, Blackstone, Blackrock, Truman et al) do not have the right to foreclose on the Plaintiff's property, their right as a secured creditor should be disallowed, under the Unclean Hands Doctrine:

**The Unclean Hands Doctrine as it applies to Defendant Rushmore Loan Management's right to foreclose or right to be listed as a secured Creditor.**

Case Law:
A foreclosing plaintiff came to the court with unclean hands in PNC Bank, Nat'l Ass'n v. Smith, 225 So. 3d 294, 295 (Fla. 5th DCA 2017) ("Unclean hands may be asserted as an affirmative defense to a mortgage foreclosure action.").

The defense of unclean hands is an equitable defense, however, "[a]ll mortgages in Florida are foreclosed in equity." Fla. Stat. § 702.01. If the foreclosing plaintiff came to the court with unclean hands, it will be prevented from foreclosing, regardless of the merits of the claim. Roberts v. Roberts, 84 So. 2d 717, 720 (Fla. 1956). In the context of foreclosure lawsuits, the plaintiff will have unclean hands if it uses "unscrupulous practices, overreaching, concealment, trickery, or other unconscientious conduct." Shahar v. Green Tree Servicing LLC, 125 So. 3d 251, 253 (Fla. 4th DCA 2013). For example, **Florida courts have found that a lender came to the court with unclean hands when it altered the borrower's income information on the loan application, without the borrower's knowledge, in order to qualify the borrower for a loan, which resulted in a payment increase of 50%.** Shahar, 125 So. 3d at 251. **To succeed on this defense, the borrower must show that it relied on the plaintiff's misconduct, and suffered an injury**. 21st Mortg. Corp. v. TSE Plantation, LLC, 301 So. 3d 1120, 1122 (Fla. 1st DCA 2020).

Based on this, a lender, or the holder of the note and mortgage, must ensure that it is coming to the court with clean hands. Accordingly, lenders should avoid "unscrupulous practices, overreaching, concealment, trickery, or other unconscientious conduct."

Additional:
A lender can be estopped from foreclosing on an accelerated basis where the borrower establishes that the lender has unclean hands.   See Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 789 (Fla. 4th DCA 1995)."
City First Mortg. Corp. v. Barton, No. 4D06-4419, COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT, 988 So. 2d 82; 2008 Fla. App. LEXIS 10848; 33 Fla. L. Weekly D 1785, July 16, 2008, Decided,   Released for Publication August 29, 2008.Rehearing denied by City First v. Barton, 2008 Fla. App. LEXIS 13005 (Fla. Dist. Ct. App. 4th Dist., Aug. 29, 2008)

The Plaintiff in this Adversary case has provided multiple examples, since 2015, in Bankruptcy Court, in State Court, and in Federal Court, showing Rushmore Loan Management, and their partners, (including Bank of America, Blackstone, Blackrock et al) have used trickery, deceit, false statements about the Plaintiff's Debt owed in court, false statements about the Mortgage Contract, impersonation of the Plaintiff, actions to assist in a smear campaign developed by Carnegie Mellon University, against the Plaintiff in 2009-2012, and to cause damage to the Plaintiff's Memphis house, and abandonment of that property by a Bank Manager, and the keeping of the excess proceeds of the sale Plaintiff's property in 2018.  Many of these actions have been provided to the court in the active Montana Federal District case.

Plaintiff added US Chapter 13 Trustee Jason Wilson-Aguilar, Mary Lisa Lewandowski, and Kimberly Williams as Defendants under **Section 1983.**

A **Section 1983 lawsuit** is a **civil rights lawsuit**. It can be filed by someone whose **civil rights** have been violated. The victim can file a lawsuit if the wrongdoer was acting **under color of law**. Only **federal rights** are protected by the statute.
Technically, Section 1983 is a **procedural device** based on a federal statute. It gives federal courts jurisdiction to hear civil rights cases.

No one can be liable under Section 1983. Instead, it creates liability for violating other federal laws. 1983 cases always include an alleged violation of another law, such as the:
- First Amendment,
- Fourth Amendment
- Ninth Amendment
- Fourteenth Amendment
- Social Security Act.10

**Additional facts that have arisen impacting the Montana District case since it was filed**:

Defendant Rushmore Loan Management, did not appear or answer the Plaintiff's summons, for the Montana Federal District Case, after their Foreclosure Trustee stated they did receive the Waiver of Summons, and they stated they received the Plaintiff's complaint in July 2022. This is proof they are in Default in that case. The Plaintiff reserves the right to ask the court to grant the Plaintiff the relief she seeks in that case.

In January 2023, the Plaintiff became aware via discussion of author Whitney Webb, in her new book: "One Nation Under Blackmail", that Convicted Criminal Jefferey Epstein, through his associations at MIT university, funded an AI (Artifical Intelligence) scientist Ben Goertzel, the founder of SingularityNet, who is a partner with Charles Hoskinson, and his firm IOG, (Input Output Global). It is through IOG's Foundation, and their platform Project Catalyst that the Plaintiff became aware of the same parties associated with her 2009-2012 smear campaign—including threats against her, designed and funded by Carnegie Mellon University—were stalking and surrounding her once again. Similar behaviors to those in that smear and attack, and to those she had experienced 27 years prior appeared also on this platform.

There were numerous online attacks of the Plaintiff, over a period of months in 2021, using references to Sexual Violence or intimidation, or public gender humiliation and hacking her private proposal files to taunt her, at Project Catalyst, on the Discord Platform and during Zoom Calls. Charles Hoskinson and his managers were aware of these incidents, and the Plaintiff's history at Carnegie Mellon, through multiple written requests by the Plaintiff asking that he or his staff intervene. Her requests were ignored, similarly to her requests at CMU.

Bizarrely, soon after the attacks on the Plaintiff occurred, Mr Hoskinson was offered a School of Mathematics with his name, at Carnegie Mellon University, when he does not even have an undergraduate degree. Mr Hoskinson also began a public dialog with celebrity Mark Cuban, who previously through his brother and foundation manager, Brian Cuban, participated in the unprovoked online, public smear of the Plaintiff, which resulted in criminal convictions, where the Plaintiff was the victim. The smear and attacks occurred unprovoked after CMU's former faculty member, Brent Scott, and his company InSex (see Wikipedia) became a public figure in 2009.

At CMU, the Plaintiff had complained about Mr Scott's impact on their department, faculty and students, while, she was a tenure-track professor. Scott was the founder of the first violent pornography site, offering a global online service (InSex) where women could be tortured for a fee, using the same technology he developed as a professor at CMU. He was strongly supported for this development and behavior by CMU administration. He later sold the content to European investors for millions of dollars.

**Personal Jurisdiction of defendant Carnegie Mellon University**

The Plaintiff's LLC, created through the Secretary of State in Montana, is io-Haptik, LLC. It is a single member LLC. It was founded after her proposal received 115,000 votes for funding from the Project Catalyst community.

The above history links Carnegie Mellon University, (and once again), Mark Cuban, (associated with CMU through his 2009-2012 actions against the Plaintiff), and Ben Goertzel, (and his company SingularityNet), to Charles Hoskinson, his company IOG, and their Project Catalyst, through online actions, confirming Personal Jurisdiction for Defendant Carnegie Mellon, for the Montana District Court case.

These relationships further corroborate the Plaintiff's history, with Carnegie Mellon University, and the clear practice she witnessed of highly regarded technical US universities (MIT and Carnegie Mellon) receiving funding from individuals (Brent Scott, and his company InSex and Convicted Criminal Jeffery Epstein), both involved in: violent sexual behavior including: torture, technical development, and transporting large sums of money internationally.

See links:
**Exhibit E**: Whitney Webb: One Nation Under Blackmail: Ben Goetzel (AI scientist) and his company OpenCog, and his AI Robot, "Sophia", being funded by Jeffery Epstein.
**Exhibit F**: Charles Hoskinson and Ben Goetzel on stage at the Cardano Summit, in Wyoming, in 2021.
**Exhibit G**: Link to 2019 article on High Tech Companies engaging with Epstein after his conviction, (includes Ben Goertzel and his company: OpenCog)

After votes for the Plaintiff's project were confirmed, the Community Manager for Project Catalyst assigned her to a committee to work with Ben Goertzel's company Singularity Net. The Plaintiff had no knowledge of Goertzel's history with Epstein or MIT. During her time at Project Catalyst, after CMU appeared, the Plaintiff was frequently put into situations to be dismissed or bullied in any assigned role. The Plaintiff removed herself from the role, with Singularity Net. The Plaintiff then began learning about new technical developments in AI that may be beneficial to her funded project, through an AI developer associated with Project Catalyst and Singularity Net, and through videos produced by Singularity Net featuring Ben Goertzel. At this time, the Plaintiff was still unaware of the history with Jeffery Epstein.

Plaintiff reserves the right to add Cardano/Project Catalyst in future or current litigation, for harm to herself and her company because of the undisclosed history with Jeffery Epstein. Plaintiff has now distanced herself from Project Catalyst since learning of this connection. She also distanced herself from Singularity Net. This has caused additional damage to her company, IO-Haptik and her project.

Plaintiff asks that the facts surrounding Jeffery Epstein's behavior at MIT, and with Ben Goertzel, and CMU and Cardano's founder, Charles Hoskinson, be confirmed as material facts in this case.

MIT and CMU are both funded by the US Military, and other Military contractors and funders, including Blackstone, (which is part of Bank of America, who retained Rushmore Loan Managment as their client), and Blackrock, which owns Blackstone and funds international—often off the books—Military activities including those in the Ukraine.

**Ongoing Retaliation**

Plaintiff's dog suffered multiple additional poisoning attempts, and suffered neurological effects for them, between July 14, 2022, (the day after her Federal case was filed), through November 2022. These were carried out using a strong thick alkaline liquid being placed in areas where Plaintiff and her dog need to walk, including around the door of her house and car. These attempts were documented. As stated in her original complaint, such attempts are common when an individual complains about threats or violence associated with some military groups.

The Plaintiff received threats about her dog when CMU organized a smear campaign against her in 2009-2012, when Brent Scott became a public figure. Plaintiff was also told by former Airforce Sargent, Dorothy Mackie, that two of her dogs were poisoned (and died), in her yard, after she complained about her rape in the military. There is an exhibit in the current Montana Federal District Case, showing a federal agent suggesting to federal snipers that a a U.S. citizens dog be killed for no justifiable reason other than to cause suffering of the US Citizen who was protecting the rights of his property, (his Cattle).

**Retaliation involving Violations of Plaintiff's Constitutional Rights, by those acting under the Color of the Law.**

Since July 13, 2022, multiple Federal-related agencies and their partners, the Plaintiff must engage with, (Medicare, Social Security Administration, Federal Student Loans), inappropriately changed the Plaintiff's data in databases and participated in gaslighting efforts all of which sought to wrongfully increase the Plaintiff's debt and cause her financial harm. This included:

Plaintiff's Federal Medicare benefits were manipulated after she filed her case, in attempts to falsely increase her debt, and deny her access to dental care, which was not successful but illegal and damaging and took two months to remedy. (Adding Jane and John Doe from Humana Medicare Advantage, as Defendants)

Plaintiff's social security divorced spouse retirement benefit was wrongfully denied. Previously an attorney informed her that this benefit was her right to receive. In contradiction, a local Seattle SSA office intentionally used an improper methodology to skew the outcome or determination. The Plaintiff obtained statements by multiple Social Security representatives and managers, in other locations outside King County Washington, that this was improper. They felt it was merely a mistake. But even the regional manager defended these actions. This is well documented. **Exhibit H** This is part of her Chapter 11 filing, as it relates to her rightful income which has been manipulated downward, wrongfully. (Adding Mary Lisa Lewandowski as Defendant).

The Plaintiff's Federal Student Loan was increased without proper documentation over 200%, and was improperly reported at Credit Reporting agencies. Her loan was incorrectly published as originating in 2001, instead of 1987, in order to hide the wrongful manipulation of the Federal NSDLS database. This is well documented. This required two months to sort out. And it is still an issue, and part of the adversary complaint, as it relates to the Plaintiff's creditors and the amount owed. When questioned, the agency also only provided the signature page of a document signed by the Plaintiff, in 2001, not the entire document, in hopes the Plaintiff would be intimidated. Gratefully the plaintiff has her original loan documents. (Adding Kimberly Williams as Defendant)

**Relief Sought**

A trial by jury, to determine the associations of parties as described in the complaint, and their violation of the Plaintiff's constitutional and contractual rights as outlined above, and to determine the value of the damages caused by these actions. Also including how the Plaintiff can be compensated equitably for these damages, and that the record be corrected, including her Credit Record.

To determine if the Defendants named above colluded to intentionally increase her Debt on record, including that related to her homestead in an attempt to cover their bad actions and to remove her assets in order to benefit the Banks and their associates and Carnegie Mellon University's Interests.

To Determine what if anything the Plaintiff owes on the previous 2008 mortgage, and to whom she would owe it, with a full and complete documented accounting agreed to by the Plaintiff.

To Determine who initiated the actions and why—of the defendants at the Social Security Administration of Washington State, to use a confirmed incorrect methodology to deny her Divorced Spouse Benefit. To Correct this action and increase her Social Security Benefit to reflect this correction.

To Determine who initiated the actions and why—at Federal Student Aid and the NSDLS to alter the history of her 1987 Student Loans in 2018, to inflate their Debt by nearly 200% and to begin the reporting of this false data to the Credit Bureau in 2018, in order to lower her credit score, and future Social Credit Score.  Note: The lowering of an individuals Social Credit Score will reduce their ability to travel beyond 15 minutes from their home, buy groceries, or goods, and other limitations; it is a form of imprisonment, of those in Debt. Although it is against the constitutional rights of US Citizens, it is supported behind the scenes by many US Polititians from both major parties. It is assumed by experts in technical development to be implemented within the next two years. Governor Inslee supports such a system.

To Determine who initiated the actions, and why—to wipe the Plaintiff's credit report clean of her Chrysler Car loan, which was in good standing, and reported properly, and all her mortgage history, in 2018.

And to provide any other relief to the Plaintiff in support of her claims which the Court and Jury deem equitable and just.

*MD.LM*

_____
Marta Lyall, Plaintiff
Date: February 4, 2023